IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE

| | |
|---|---|
| JOHNNIE NEWSOM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-811 |
| ) | |
| SHERIFF DARON HALL, *et al.*, ) | Judge Sharp |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION

Plaintiff Johnnie Newsom, a pretrial detainee at the Hill Detention Center operated by the Metro-Davidson County Sheriff's Office in Nashville, Tennessee, filed his *pro se* complaint (ECF No. 1) purporting to set forth claims for civil rights violations under 42 U.S.C. § 1983. He proceeds *in forma pauperis*. His complaint is before the Court for an initial review pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

I.  **FACTUAL ALLEGATIONS**

The plaintiff names as defendants Sheriff Daron Hall, Lieutenant T. Waller, Officer L. Looch, "ABL Kitchen Staff," and "Ms. Shelia" (last name unknown), who is alleged to be an ABL employee who is responsible for the preparation of all meals at the detention center.

The plaintiff states that on a particular unidentified day, he had received his meal from the kitchen staff at the detention center, and had begun to take a few bites, when he saw some "insects" in his sandwich. (ECF No. 1, at 2.) He took his lunch to Officer Looch and asked to speak with the lieutenant on duty. He asked Lt. Walker to take pictures of his lunch. Attached to the complaint is a Grievance Response Form completed by "V. Dulin," which documents that Lt. Walker did indeed take a photograph of the bug in the plaintiff's lunch, which the plaintiff submitted along with a grievance complaining about the insect. The grievance was sustained; the response notes that the insect appeared to be a "rollie pollie bug," and explained that such insects are not present in the kitchen and that the kitchen staff worked hard to monitor conditions in the kitchen to ensure that such events did not happen. The

response also included an apology for the incident. (ECF No. 1, at 6.) The plaintiff does not allege that he suffered any illness resulting from finding the insect in his food.

The plaintiff also claims that on some days he and other inmates have observed ants, roaches, spiders and other insects "crawling around during meal-time." (ECF No. 1, at 2.) The plaintiff states that this situation is very unsanitary and that he could "easily contract food poisoning or some other stomach virus or even death due to the filthiness [sic] of this lunch room." (*Id.*) He claims he has been told by inmates employed as kitchen workers that the kitchen is full of mice and rats that get into the food that is fed to the inmates. The petitioner asserts that "inmates should not have to eat such garbage that . . . the staff here at Hill Detention Center would not eat themselves." He alleges that he "has been and will continue to have ill sick feelings after eating what this institution calls food" and that he is now afraid to eat the food because of the risk of food poisoning. (ECF No. 1, at 4.)

The plaintiff further complains that inmates at the detention center are supposed to get at least two hot meals per day, but sometimes they get only one hot meal and two sack lunches.

The plaintiff also asserts that inmates are exposed to high levels of radon, and that the facility does not meet the State's requirements for radon levels and should be investigated.

Finally, the plaintiff alleges that overcrowding at the detention center causes "even more of a danger . . . [to] the health and safety of each inmate." (ECF No. 1, at 3.) He complains that there are not enough officers to handle the crowded conditions.

The plaintiff seeks a preliminary and permanent injunction ordering the defendants to pay the costs of this suit; a declaration that the acts and omissions described in his complaint violated the plaintiff's rights under the United States Constitution; compensatory damages of $250,000; and punitive damages of $250,000.

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any portion of a civil complaint that (1) fails to state a claim upon which relief can be granted, or (2) is frivolous. The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under [§ 1915(e)] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v.*

*Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up unpled allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

### III. ANALYSIS AND DISCUSSION

To state a claim under § 1983, a plaintiff must "identify a right secured by the United States Constitution and deprivation of that right by a person acting under color of state law." *Russo v. City of Cincinnati*, 953 F.2d 1036, 1042 (6th Cir. 1992); *West v. Atkins*, 487 U.S. 42, 48 (1988). Thus, the first question posed by the plaintiff's allegations is whether he adequately alleges the deprivation of a right secured by the United States Constitution.

The plaintiff's claims are based on the conditions of his pretrial detention. The Eighth Amendment forbids the infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII. Because the Cruel and Unusual Punishments Clause "is concerned" with punishment by the state "after it has secured a formal adjudication of guilt in accordance with due process of law," *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977), it does not apply to pretrial detainees. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). However, state pretrial detainees are shielded from cruel and unusual punishments by the Fourteenth Amendment's Due Process Clause, *see, e.g.*, *Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005), which provides similar if not greater protections than the Cruel and Unusual Punishments Clause. *County of Sacramento v. Lewis*, 523 U.S. 833, 849–50 (1998); *Bell*, 441 U.S. at 545. For the sake of simplicity, the Court will refer to the Eighth Amendment in the following discussion.

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; [these] officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). An Eighth Amendment conditions-of-confinement claim has two elements. "First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities." *Id.* at 834 (internal quotation marks and citations omitted). Second, the prison official's "state of mind [must be] one of 'deliberate indifference' to inmate health or safety." *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 302–03 (1991)).

Under these principles, to state a constitutional violation based on unsanitary food preparation, a prisoner must do more than allege a single or isolated incident of contamination. "The fact that the [prison] food occasionally contains foreign objects or sometimes is served cold, while unpleasant, does not amount to a constitutional deprivation." *Smith v. Younger*, No. 95–5482, 1999 WL 623355, at *2 (6th Cir. Aug. 9, 1999) (citation omitted) (affirming district court's dismissal of plaintiff's Eighth Amendment claim based on the presence of a worm in her peanut butter). In this case, the plaintiff alleges a single incident when his food contained a single insect. Further, although he alleges generally that he has been told the detention center kitchen is infested with vermin, and that he regularly sees insects in the dining area, he does not allege that his food is regularly contaminated with insects or other foreign objects, or that he has suffered any harm resulting from the alleged infestation. The Court therefore finds that his allegations regarding the insect in his food and the sight of insects in the dining room do not rise to the level of a constitutional violation.

Likewise, the plaintiff's claim that the detention center is supposed to serve at least two hot meals per day but that on occasion he receives only one hot meal and two cold meals per day does not state a constitutional violation. Prisoners have a basic human right to be served food of adequate nutrition in adequate quantities. This guarantee does not incorporate a requirement that prisoners be served any specific number of hot meals per day. At worst, the conduct the plaintiff describes amounts to an

inconvenience associated with ordinary prison life. The occasional deprivation of a hot meal is not a deprivation that triggers Eighth-Amendment scrutiny. *Cf. Woods v. Frederick*, No. 4:07 CV 68, 2007 WL 1198882, at *4 (N.D. Ohio April 18, 2007) (finding that a prison's failure to provide two hot meals per day for thirty days while the cafeteria was being remodeled did not violate the Eighth Amendment).

Likewise, the plaintiff's complaint about overcrowding does not state a claim for violation of his constitutional rights. The law is clear that overcrowding, in and of itself, is not necessarily unconstitutional. *Johnson v. Heffron*, 88 F.3d 404, 407 (6th Cir. 1996) (citations omitted). If the overcrowding results in the denial of a basic human need, such as food, shelter, or warmth, that would be a constitutional wrong. *Wilson*, 501 U.S. at 298. The plaintiff does not allege the existence of any such circumstances here. Instead, the plaintiff vaguely alleges that overcrowding poses a danger to the health and safety of every prisoner. He has not indicated how he has been endangered by overcrowding, or that he has suffered the deprivation of a basic human need resulting from the overcrowding, as required to state a violation of the Eighth Amendment.

Finally, with respect to the plaintiff's claim that inmates at the detention center are exposed to high levels of radon and that the "facility has not passed state requirement tests" (ECF No. 1, at 3), the Court finds that this statement is entirely too speculative to state a colorable claim for relief. The plaintiff does not provide any facts upon which he bases his belief regarding exposure to radon. He also does not indicate how he believes he has been harmed or may be harmed in the future by the presence of radon. Moreover, although an inmate may state an Eighth Amendment claim based on allegations that prison officials have, with deliberate indifference, exposed him to an unsafe condition that poses an unreasonable risk of serious damage to his future health, *see Helling v. McKinney*, 509 U.S. 25, 34–35 (1993), the failure to "provide a maximally safe environment, one completely free from pollution or safety hazards, is not." *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). Many Americans live under conditions of exposure to various contaminants. The Eighth Amendment does not require prisons to provide prisoners with more salubrious air, healthier food, or cleaner water than are enjoyed by substantial numbers of free Americans. *Id.* On this basis, the Seventh Circuit rejected prisoner constitutional claims that the prison's drinking water contained dangerously high levels of radium. *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). *See also Mejia v. McCann*, No. 08 C 4534, 2010 WL

5149273, at *9 (N.D. Ill. Dec. 10, 2010) ("Unfortunately, it is a fact of life that the water in this region has high levels of radium and radon. Plaintiff has not, and surely cannot, suggest that prison officials have actually poisoned the water."). Likewise, radon is common in this area, but the plaintiff has not alleged sufficient facts to support a claim of deliberate indifference to a serious health risk based on the allegedly high levels of radon at the prison.

## IV. CONCLUSION

For the reasons set forth herein, the Court finds that the complaint fails to allege facts that give rise to a reasonable inference that the plaintiff has suffered a deprivation of his constitutional rights. The complaint therefore fails to state a claim under 42 U.S.C. § 1983 and must be dismissed.

An appropriate order will enter.

Kevin H. Sharp
United States District Judge